AUKER ET AL. *v.* REVIEW BOARD, INDIANA EMPLOYMENT SECURITY DIVISION ET AL.

[No. 17,560. Opinion Remanding Cause for Additional Evidence Filed December 12, 1946. Opinion on Merits Filed March 7, 1947. Rehearing Denied April 25, 1947. Transfer Denied June 10, 1947.]

*Busby & Davisson,* of Anderson, for appellants.

*Bagot, Free & Morrow,* of Anderson, for appellees.

OPINION REMANDING CAUSE FOR ADDITIONAL EVIDENCE

PER CURIAM.—This appeal arises out of a decision of the Review Board, operating under the Employment Security Act of the State of Indiana, denying unemployment benefits to the appellants.

The Board found that the appellee company's 3800 employees fell roughly into three classifications, one of which was the hourly rated production employees. On behalf of such employees, the union authorized as their sole bargaining agent submitted to the company 15 separate demands concerning wages and hours and conditions of work. Negotiations thereon were unsuccessful and the union membership, by an election, authorized a strike if the demands were not met. Thereafter, a general strike was called and the picket line formed and maintained, prevented production of any kind, although the company had sufficient materials and unfilled orders to furnish employment to their employees.

That a number of the hourly rated production employees, although eligible for union membership, were not members, and did not finance or participate in the labor dispute or the strike, or in the decision to call the strike. They were ready, available and willing to work, but could not under the conditions which prevailed.

That these non-union employees performed the same types of work as those who were members of the union, and as employees in the bargaining unit their wages and terms and conditions of employment would be affected by the outcome of the labor dispute in the same manner as would the members of the union.

This appeal involves only those who were not members of the union.

As grounds for reversal the appellants first assert the evidence is not sufficient to sustain the finding of facts, in that there is no evidence that any of the 15 separate demands concerned wages or hours or conditions of work; that such demands might have concerned purely local union rights, such as check off, maintenance of membership, and the like; so that the non-union

workers could not even have been interested in the *results* of the bargaining, to say nothing of the dispute.

It appears by way of stipulation that the bargaining agent (Local No. 663, International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, C. I. O.) "submitted to Guide Lamp Division fifteen demands and stated that such demands were submitted in accordance with national policy." There is nothing further on the subject. Nowhere does the evidence disclose either the demands made or the substance or nature of them.

We do not feel justified in reversing for the lack of evidence which seems to have been omitted because of an inadvertence, and which is doubtless available, and necessary to a determination of the cause on its merits.

The proceeding is, therefore, remanded to the Review Board with instructions to take additional evidence on the subject within 30 days, and to promptly certify said evidence to this Court to be used in the determination of this cause in accordance with § 52-1508, Burns' 1933 (Supp.).

NOTE.—Reported in 70 N. E. (2d) 29.

## OPINION ON MERITS

DRAPER, J.—This proceeding arises out of a decision of the Review Board, operating under the Employment Security Act of the State of Indiana, denying unemployment benefits to the appellants.

The Board found the facts to be as follows: The appellee company's 3800 employees fell roughly into three classifications, one of which was the hourly rated production employees. Local No. 663, International Union, United Automobile, Aircraft and Agricultural

Implement Workers of America, C. I. O. was designated by the National Labor Relations Board as the sole and exclusive bargaining agent for the hourly rated employees in April, 1940, pursuant to an election held among such employees. On behalf of such employees, the union so authorized as their sole bargaining agent submitted to the company 15 separate demands concerning wages and hours and conditions of work. Negotiations thereon were unsuccessful and the union membership, by an election, authorized a strike if the demands were not met. Thereafter, a general strike was called and the picket line formed and maintained prevented production of any kind, although the company had sufficient materials and unfilled orders to furnish employment to their employees.

A number of the hourly rated production employees, although eligible for union membership, were not members, and did not finance or participate in the labor dispute or the strike, or in the decision to call the strike. They were ready, available and willing to work, but could not under the conditions which prevailed.

These non-union employees performed the same types of work as those who were members of the union, and as employees in the bargaining unit their wages and terms and conditions of employment would be affected by the outcome of the labor dispute in the same manner as would the members of the union.

On the foregoing facts relief was denied the appellants, each of whom were hourly rated production employees having no membership in the union.

The appellants in their briefs here first contended that the evidence was not sufficient to sustain the finding of facts, in that there was no evidence that any of the demands concerned wages or hours or conditions of work, but on the contrary, so far as the evidence

disclosed, might have concerned purely local union rights. We agreed, and on December 12, 1946, *ante*, p. 486, 70 N. E. (2d) 29, remanded for the taking of additional evidence.

The evidence taken and certified to this court pursuant to that order discloses that certain of the demands made upon the employer by the bargaining agent did in fact concern wages and conditions of work of all the hourly rated production employees. We, therefore, now hold the appellants' contention in this regard to be without merit, and the question remaining for determination is whether, under the facts found, the appellants were entitled to unemployment benefits.

The statute [§ 52-1507(f) (3), Burns' 1933 (Supp.)] provides that an employee shall be ineligible for benefits, if his unemployment is due to a stoppage of work which exists because of a labor dispute at his place of work, unless it is shown to the satisfaction of the Board that: "He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; . . . ."

The work stoppage concededly existed because of a labor dispute. The appellants did not participate in or finance such dispute. The question then, is whether the facts found were sufficient to justify the Board in concluding that the appellants were directly interested in the dispute which caused the work stoppage, *or* that they belonged to a grade or class of workers mentioned in the statute.

In *Chrysler Corporation* v. *August A. Smith* (1941), 297 Mich. 438, 298 N. W. 87, 135 A. L. R. 900, the majority opinion quotes with approval the following language: "The rule is too well settled to be questioned that a labor dispute that affects the wages, hours of work and general conditions of employment, causes all employees concerned to be directly interested. This is not a contingent, remote, or speculative interest, but rather must be regarded as directly within the meaning of the statute.". A minority of the justices preferred to say, in accordance with the rule established and adhered to by the highest administrative tribunal provided for in the English Act, after which our own is patterned, that "an employee directly interested in a labor dispute is one whose wages, hours, or conditions of work will be affected by the outcome of the dispute." The latter quotation commends itself to us as an accurate statement of the rule which should be adopted and applied by this court. The following language by Justice Boyles of the Supreme Court of Michigan in his separate opinion in the case just referred to seems appropriate to this case. He said:

> "Whether members of any union or not, the wages, hours, or conditions of work of all alike would be affected favorably or otherwise by the outcome of the dispute. I concede that this construction may appear to work a hardship on some employees who may not be in sympathy with a labor dispute. However, our labor policy now seems to be well established that sole bargaining rights by the majority involves assent to the exercise thereof by individuals who constitute the minority."

As above stated, the appellants were not union members and did not vote for, participate in, or finance the

strike, but it does not follow that they were not directly interested. Participation might or might not be accompanied by a direct interest, and a direct interest might or might not be accompanied by participation. Each can exist independently of the other. In *Huiet* v. *Boyd* (1941), 64 Ga. App. 564, 13 S. E. (2d) 863, it is pointed out that the words "directly interested" in the dispute, as used in the act must necessarily, if given any meaning at all, be given a meaning different from that of "participating" in the dispute, and in the course of its opinion the court says:

> "It is immaterial that the claimants, whether as members of the union or not, may not have voted for or participated in the strike which caused the stoppage of the work, and may not have been in sympathy with the strike and may have attempted to go back to work but were prevented by the pickets. Since they are directly interested in the dispute which caused the stoppage of the work and their unemployment, they are not entitled to the benefits of the act."

The Board found, and the evidence sustains the fact, that as employees in the bargaining unit, the wages and conditions of the appellants' employment would be affected by the outcome of the dispute, though they did not belong to the union or participate in the strike. We, therefore, hold that they were directly interested in the labor dispute which caused the stoppage of work.

It must be conceded that the appellants were unemployed "through no fault of their own" in the sense that their conduct was not blameworthy or worthy of censure, but the word is not so employed in the first section of the Act. *Walter*

*Bledsoe Coal Co.* v. *Review Board, etc.* (1943), 221 Ind. 16, 46 N. E. (2d) 477.

Once disqualified for benefits because their unemployment was due to a stoppage of work which existed because of a labor dispute, the burden was upon the appellants to requalify themselves for benefits by establishing not one, but both of the separate conditions which would requalify them. *Appeals of Employees of Polson Lumber & S. Mills* (1943), 19 Wash. (2d) 467, 143 P. (2d) 316. The appellants having failed to establish the first condition, we need not consider the grade or class provision.

The decision of the Review Board is affirmed.

NOTE.—Reported in 71 N. E. (2d) 629.