Josephine ALLEN, et al., (112 Claimants), Appellants (Claimants Below),

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, John C. Mowrer, David L. Adams and Joe A. Harris, as Members of and as constituting the Review Board of the Indiana Employment Security Division, and PRC Recording Company, Appellees (Respondents Below).

No. 93A02–8601–EX–17.

Court of Appeals of Indiana, Fourth District.

June 30, 1986.

Jerry A. Spicer, Snyder, Rakay & Spicer, Dayton, Ohio, Ronald Cross, Reller, Mendenhall, Kleinknecht, Puckett, Milligan & Cross, Richmond, for appellants.

Linley E. Pearson, Atty. Gen. of Ind., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellees.

YOUNG, Presiding Judge.

Claimants appeal from a decision of the Review Board of the Indiana Employment Security Division denying them unemployment benefits. They raise one issue on appeal:

> Whether the review board's decision that the claimants are ineligible for unemployment benefits under IND.CODE 22–4–15–3 is contrary to law.

We reverse and remand.

On May 13, 1982 the claimants, then employees of PRC Recording Company, participated in a strike. They were represented by the International Brotherhood of Electrical Workers, Local Union No. 2043, which had been the certified bargaining representative for all members of the bargaining unit since 1959.

On June 28, 1982 the union, on behalf of all employees, sent a telegram to PRC advising it that the employees were making an unconditional offer to return to work immediately. On June 30, 1982 PRC through its Labor Relations Manager, Robert Jewell, responded by telegram as follows:

> We acknowledge receipt of your telegram and hereby accept your unconditional offer to return to work. Although we presently have a staff of permanent employees sufficient to handle our production needs, you may be assured that your members will be returned to active employment as soon as work becomes available for them to perform. We appreciate your decision to terminate the strike and commend your union for the courage and foresight in reaching that decision. Our company stands ready and willing to resume negotionas [sic] with the goal of reaching final accord on new collective bargaining agreement for both units. Please contact the undersigned so that a prompt meeting can be arranged for this purpose.

On July 13, 1982 the union sent another telegram to PRC, in which it reiterated the employees' unconditional offer to return to work. PRC did not respond.

The claimants each requested a determination from the Indiana Employment Security Division as to their eligibility for unemployment compensation benefits. The claims were referred to an appeals referee, who determined that as to the period between May 13, 1982 and June 30, 1982 the claimants were ineligible to receive unemployment benefits, pursuant to IND. CODE 22–4–15–3(a):

> (a) An individual shall be ineligible for waiting period or benefit rights: For any week with respect to which his total or partial or part-total unemployment is due to a labor dispute at the factory, establishment, or other premises at which he was last employed.

The referee further determined that as of June 30, 1982 the claimants became eligible for unemployment benefits, pursuant to IC 22–4–15–3(b):

(b) This section shall not apply to an individual if he has terminated his employment, *or his employment has been terminated, with the employer involved in the labor dispute;* or if the labor dispute which caused his unemployment has terminated and any period necessary to resume normal activities at his place of employment has elapsed; or if all of the following conditions exist: He is not participating in or financing or directly interested in the labor dispute which caused his unemployment: and he does not belong to a grade or class of workers of which, immediately before the commencement of his unemployment, there were members employed at the same premises as he, any of whom are participating in or financing or directly interested in the dispute; and he has not voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or factory in which a labor dispute is in progress.

(Emphasis added.)

The referee based his findings on *Jackson v. Review Board of the Indiana Employment Security Division* (1966), 138 Ind.App. 528, 215 N.E.2d 355, in which it was held that where permanent replacements had been hired to supplant striking employees, the employment relationship between the strikers and the company was sufficiently severed so as to render the labor dispute disqualification rule inapplicable.

PRC appealed to the review board, which modified the referee's decision to show that the claimants were ineligible to receive benefits even for the period after June 30, 1982. The claimants then filed an appeal in this court.

The claimants contend the review board's determination as to their ineligibility for unemployment benefits after June 30, 1982 is contrary to law. In determining whether the review board erred, we engage in a two-tiered standard of review. First, we

examine the relationship between the board's premises and conclusions, and inquire as to the reasonableness of the deduction made. Secondly, we examine the nexus between the premises and the evidence presented to determine if the evidence justifies the premises. *Adams v. Review Board of the Indiana Employment Security Division* (1983), Ind.App., 452 N.E.2d 1083, 1084–1085.

The review board concluded that the claimants were not permanently replaced. In 1985 we reaffirmed the position taken in *Jackson, supra,* that permanent replacement of striking employees constitutes termination of the employment relationship between the strikers and the employer. *A–1 Compressor, Inc. v. Review Board of the Indiana Employment Security Division* (1985), Ind.App., 481 N.E.2d 1120. In *A–1 Compressor,* the striking employees wrote a letter to the Employee Relations Manager accepting a company proposal to return to work. The manager told the striking employees and union representatives that there were no job vacancies, that permanent replacements had been hired, and that the strikers would not be permitted to return to work.

In this case, PRC, in its June 30 correspondence, stated that it had a "staff of permanent employees sufficient to handle" its production needs. Despite its acceptance of the claimants' offer to return to work, no work was available for the claimants to perform. As the *Jackson* court aptly stated:

It is apparent that the appellants were not temporarily replaced, but permanently replaced as the employer testified that work was not available after the strike was terminated. Therefor[e], the relationship of employer and employee was severed and the labor dispute section is not applicable.

*Jackson,* 215 N.E.2d at 360.[1]

The phrase "permanent replacement" requires neither that the replacement employ-

---

1. We reiterate our position as stated in *A–1 Compressor, supra,* that the 1980 amendment to

IC 22–4–15–3 (deleting the "work stoppage" language) in no way impairs the applicability of

ees eternally remain with the company nor that the striking employees be eternally barred from any further employment with the company. PRC's offer to return the claimants to "active employment as soon as work becomes available for them to perform" does not change the fact that, as of June 30, 1982, permanent replacement employees were preventing the claimants from performing their former employment tasks. Although the record indicates that some of the claimants have in fact been recalled by the company, others have waited and may continue to wait years before the replacement employees decide, for one reason or another, to terminate their employment with PRC. Even though the language used by PRC in dealing with the claimants was perhaps more amicable than language used by management in other cases, the effect was still the same: there was no work available for the claimants to perform because permanent replacements had been hired. Therefore, the employment relationship terminated as of June 30, 1982, and the claimants were eligible for benefits as of that date.

The review board determined that the claimants were not permanently replaced. This determination is unreasonable in that it is contrary to existing case law as well as to the evidence presented in the case. The review board's modification of the referee's decision was therefore contrary to law.

Accordingly we reverse and remand this case to the review board for further proceedings consistent with this opinion.

MILLER and CONOVER, JJ., concur.

Jackson, supra, to this case since the Jackson case turned not upon the "work stoppage" language but upon the "termination of employment" language.